IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MELANIE DAVIS, | Case No. 8:18-cv-00101 |
| Plaintiff, | |
| v. | **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT** |
| AK-SAR-BEN VILLAGE, L.L.C., | |
| Defendant. | |

COMES NOW the Defendant, AK-SAR-BEN VILLAGE, L.L.C. (hereinafter, "Defendant"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(1), submits this brief in support of Defendant's motion to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction.

## INTRODUCTION:

The Plaintiff has filed this Amended Complaint pursuant to Title III of the Americans with Disabilities Act (hereinafter "ADA"), alleging that she was deterred from patronizing the property known as the "Shoppes at Aksarben" (hereinafter the "Property"), located at 1220 South 71st Street, in Omaha, Nebraska, due to the alleged lack ADA compliant accessible parking stalls, signage, access aisles, and accessible routes on the Property. The Defendants immediately remedied the alleged violations, rendering Plaintiff's claims moot in their entirety and leaving nothing for this Court to address.

The Plaintiff filed the instant action against Defendant without any notice regarding the alleged barriers to access she allegedly encountered. Had the Plaintiff contacted the Defendant regarding the alleged barriers, the Defendant would have taken the same action to voluntarily and permanently remedy the alleged ADA deficiencies. (Aff. of Baez, ¶ 5). While the law does not require that a plaintiff provide

pre-suit notice to a place of public accommodation or commercial facility, courts have acknowledged that a "plaintiff's[1] failure to ask for or to accept voluntary compliance prior to suit" begs the question whether "the plaintiff has acted in bad faith, has been unduly litigious, or has caused unnecessary trouble and expense." See Davis v. Peters Services, Inc., No. 1:16-CV-00020, Document 31 (S.D. Iowa Mar. 10, 2017) (Jarvey, J.) (citing Ass'n of Disabled Americans v. Neptune Designs, 469 F.3d 1357, 1360 (11th Cir. 2006)).  Plaintiff similarly did not ask Defendant to voluntarily comply with the ADA prior to the filing of the Complaint.  (Aff. of Baez, ¶ 5).

Notwithstanding the Plaintiff's failure to provide notice or seek voluntary remediation from Defendant, upon the filing of this lawsuit, Defendant took swift and immediate action to determine the validity of the ADA violations alleged in the Complaint and thereafter contracted and paid for services to remedy said alleged deficiencies on the Property.  Defendant further engaged in additional work to confirm that all areas of the parking area and sidewalk routes are compliant with applicable ADA standards and that alleged barriers to access have been removed.

Accordingly, based on the below, and the Affidavit of Victor Baez with accompanying attachments (hereinafter "Aff. of Baez"), all alleged violations of the ADA claimed by the Plaintiff relating to the Property have been addressed and remedied.  Therefore, the Plaintiff's Complaint is moot and should be dismissed with prejudice.  In addition, the Plaintiff does not have standing to maintain this lawsuit, requiring its prompt dismissal with prejudice.  Finally, any request by the Plaintiff for her attorney's fees should be denied.

---

[1] The case involved the same Plaintiff, Melanie Davis, and the same attorney, Padraigin Browne.

2

**APPLICABLE LAW:**

"[M]ootness and standing are questions of subject matter jurisdiction." Doe v. Nixon, 716 F.3d 1041, 1047 (8th Cir. 2013).  Article III of the United States Constitution grants the Judicial Branch authority to adjudicate Cases and Controversies.  Davis v. Anthony, Inc., No. 16-4051, 2018 U.S. App. LEXIS 7898 at *2 (8th Cir. Mar. 29, 2018) (citing Already, LLC v. Nike, Inc., 568 U.S. 85, 90, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013)).  A case becomes moot, and therefore no longer a Case or Controversy for purposes of Article III, when the "issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Id. When it becomes clear that a federal court can no longer grant effective relief, the case is moot.  Stewart v. Popeye's Chicken, No. 8:16-CV-484, 2017 U.S. Dist. LEXIS 5352 (D. Neb. Jan. 13, 2017) (dismissing Title III ADA claims for both mootness and standing where defendant voluntarily remedied parking lot violations).

Additionally, federal courts have no subject matter jurisdiction over cases in which the plaintiff lacks standing to bring the complaint.  Harrington v. Seward Cnty., No. 4:15-CV-3068, 2017 U.S. Dist. LEXIS 41328 (D. Neb. Mar. 22, 2017) (citing Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).  Thus, standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." Brown v. Grandmother's, Inc., No. 4:09-CV-3088, 2010 U.S. Dist. LEXIS 13625 at *15 (D. Neb. Feb. 16, 2010) (quoting Warth, 422 U.S. at 498 (1975)) (dismissing plaintiff's ADA claims under Title III for lack of standing where plaintiff could not establish the likelihood of future injury).

A defendant claiming that its voluntary compliance moots a case bears the burden of showing that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Davis, 2018 U.S. App. LEXIS 7898 at *3 (quoting

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)).

A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial" attack and a "factual attack" on jurisdiction. Id. at *8 (citing Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). A factual attack occurs "when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction" and the court may consider matters outside of the pleadings. Id. (citing Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009)). Accordingly, "[t]rial courts have wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." Id. at *4 (citing Johnson v. United States, 534 F.3d 958, 964 (8th Cir. 2008)); See Stewart, 2017 U.S. Dist. LEXIS 5352 (D. Neb. Jan. 13, 2017) (where court weighed evidence submitted in support of a factual challenge to subject matter jurisdiction in granting defendant's motion to dismiss). As such, a court may consider matters outside the pleadings and should not presume that a plaintiff's factual allegations are true. Osborn, 918 F.2d at 729 n.6.

The ADA grants a private right of action to "any person who is being subjected to discrimination on the basis of disability." See 42 U.S.C. 12188(a). Injunctive relief, however, is the **sole** remedy a plaintiff may seek under Title III of the ADA. Id.; See Stebbins v. Legal Aid of Arkansas, 512 F. App'x 662, 663 (8th Cir. 2013) ("Title III of the ADA does not provide for private actions seeking damages…[U]nless enforced by the Attorney General, [and] only remedy for violation of Title III of ADA is injunctive relief"); Wojewski v. Rapid City Reg'l Hosp. Inc., 450 F.3d 338, 342 (8th Cir. 2006) (remanding case with instructions to dismiss Title III ADA claims as moot because the ADA only provides injunctive relief).

## **ARGUMENT**

Plaintiff's Amended Complaint should be dismissed because the Defendant has remedied the conditions on the Property that gave rise to the filing of this lawsuit. The Plaintiff is only entitled to injunctive relief under the ADA and any order of this Court granting injunctive relief would be an unnecessary use of judicial resources. This is because the Defendant has already undertaken the necessary steps to remove all alleged barriers to access and has confirmed compliance in all areas of the parking lot and accessible routes on the Property that were not encountered by Plaintiff nor alleged in the Amended Complaint. Furthermore, Plaintiff cannot establish an injury-in-fact by her claim that she is deterred from future visits to the Property . Even if this Court determines that Plaintiff can establish a cognizable injury, the injury cannot be redressed by a favorable judicial decision because the voluntary remediation has eliminated the need for injunctive relief. Accordingly, as discussed below, this Court does not have subject matter jurisdiction to hear this case based on mootness of the Plaintiff's claims and Plaintiff's lack of standing.

### I. **The ADA Violations Alleged in Plaintiff's Complaint have been addressed and remedied, rendering this lawsuit moot.**

Based on the remedial work completed on the Property (See Aff. of Baez, ¶ 7-9, 13), and the confirmation as to all other accessible areas on the exterior of the Property, (Id. ¶ 14-15), the Plaintiff's claims in her Amended Complaint are moot. As stated above, a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. Davis, 2018 U.S. App. LEXIS 7898 at *2. Where "circumstances change over the course of litigation so that the issues in the case lose their life and a federal court can no longer grant effective relief, the case is moot." Stewart, 2017 U.S. Dist. LEXIS 5352 at *6 (D. Neb. Jan. 13, 2017)

5

(citing In re Search Warrants Issued in Connection with Investigation of S. Cent. Career Ctr., W. Plains, Mo., 487 F.3d 1190, 1192 (8th Cir. 2007)); Hillesheim v. Buzz Salons, L.L.C., 2017 U.S. Dist. LEXIS 117266 at *10 (dismissing Title III ADA claims based on mootness because "a defendant's voluntary removal of alleged [architectural] barriers prior to trial can have the effect of mooting a plaintiff's ADA claim.") (citing Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011)).

In Davis v. Anthony, Inc., the Eighth Circuit Court of Appeals affirmed a Nebraska District Court dismissal for mootness and lack of standing relating to a nearly identical ADA lawsuit brought by the same Plaintiff, Ms. Melanie Davis, which was aimed at the accessible parking stalls available at the restaurant Anthony's Steakhouse in Omaha, Nebraska. 2018 U.S. App. LEXIS 7898 at *1-2. Davis similarly requested an inspection of the steakhouse. Id. Just as the Defendant has done in this case, the steakhouse similarly remedied the allegations as set forth in Davis's complaint, which rendered the lawsuit moot - **requiring dismissal**. Id. at *4. In further affirming dismissal of the case without discovery, the Eighth Circuit would not allow Davis to expand her claims as to un-encountered violations that never injured her. Id. at *6. Additionally, because defendant moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), Davis was not afforded any Rule 12(b)(6) protections nor discovery under Rule 56(d). Id. at *7-9. Again, the Eighth Circuit affirmed the dismissal of the complaint without discovery on the same basis of mootness and standing.

Since the Davis lawsuit was filed in April of 2016 in the District of Nebraska[2], this Plaintiff has expanded her parking lot claims in that she now alleges in the instant

---

[2] The Defendant would ask this Court to take judicial notice that a search of the Plaintiff's name, Melanie Davis, in PACER as of June 18, 2018, reveals that since April 2016, Davis has filed approximately 28 lawsuits under Title III of the ADA in the District of Nebraska.

6

Amended Complaint that parking spaces must be fully compliant with all Sections of ADAAG Section 502. (See Amended Complaint, Doc. 22, ¶¶ 13, 38(a)). The broadening of Plaintiff's claim changes nothing in this case, as the remedial action taken by the Defendant has addressed all of the barriers to access as alleged in the Amended Complaint **in addition to** areas in the parking spaces that the Plaintiff did not even encounter.

It is clear from the facts and circumstances of this case that the alleged ADA violations, which have been remedied, cannot be reasonably expected to recur, because Defendant would essentially have to undo the work completed on the Property and would have to actively engage in some action to make other areas of the Property non-compliant with the ADA. See, e.g., Davis[3] v. Morris Walker, LTD et al., No. 0:17-cv-01270 (D. Minn. December 7, 2017) (granting defendant's motion to dismiss for mootness of claims and noting that there is no concern the alleged violations will recur given the defendants' "expeditious and thorough efforts to redress the problems").

Specifically, Plaintiff's Amended Complaint references alleges various violations of the ADA with respect to the exterior of the Property. These include the following:

  a. Number of Accessible Parking Spaces
  b. Signage Height for Accessible Parking Spaces
  c. Width & Slope of Access Aisles Adjacent to Accessible Parking Spaces
  d. Curb Ramp Landings
  e. Curb Ramp Slope
  f. Accessible Routes on Sidewalk

(See Amended Complaint, Doc. 22, ¶ 38 (a) - (f)).

---

[3] The case involved the same Plaintiff, Melanie Davis, and the same attorney, Padraigin Browne.

Defendant agrees that the applicable standards that apply to the Property are set forth in the 2010 ADA Standards for Accessible Design, which incorporate the 2004 ADA Accessibility Guidelines, and will hereinafter be referred to as the "ADAAG".

Each category identified by the Plaintiff in the Amended Complaint is addressed individually below. Based on the evidence submitted in conjunction with this brief, it is clear that the alleged ADA violations in the Amended Complaint have been addressed and remedied, rendering the claims moot and requiring their dismissal.

    a.    ***Number of Accessible Parking Spaces***

The parking lot at the Property complies with the ADA requirements for the number of accessible parking spaces. (See Aff. of Baez, ¶ 14). Section 208.2 of the ADAAG sets forth the required number of accessible parking spaces that must be reserved for persons with disabilities based on the total number of spaces in a parking lot. Based on the fact that the parking lot at the Property contains a total number of 297 spaces, with eight (8) accessible spaces, two (2) of which are van accessible, Defendant is not in violation of the ADA with respect to this issue, and no remedial action is required in terms of the *number* of spaces available. (Aff. of Baez, ¶ 14(a)).

Plaintiff's claims as to the lack of accessible spaces includes a claim that the spaces must comply with all requirements of ADAAG Section 502. (See Amended Complaint, Doc. 22, ¶¶ 13, 38(a)). This includes width of the parking stall (Section 502.2), access aisles properly marked, with the proper width and length (Section 502.3), ground slope in these areas that is not steeper than 1:48, and proper display of the International Symbol of Access (Section 502.6). Based on the claims discussed further below, and the Affidavit of Victor Baez, all parking spaces on the Property (even those not encountered by the Plaintiff) comply with the applicable standards set forth in

ADAAG Section 502, rendering Plaintiff's claims as to the parking spaces moot. (<u>Aff. of Baez</u>, ¶¶ 12, 14, 15).

      b.    ***Signage Height for Accessible Parking Spaces***

In her Amended Complaint, Plaintiff alleges that certain accessible parking spaces she encountered on the Property displayed the International Symbol of Accessibility signage less than sixty (60) inches above the ground, including spaces reserved for Qdoba Mexican Grill (to the north), Z Wireless, First Watch, and Qdoba Mexican Grill (to the west) in violation of ADAAG Sections 216.5 and 502.6. (<u>See</u> Amended Complaint, Doc. 22, ¶ 15, 38(b)). The ADA Sections identified by the Plaintiff require that signs shall be sixty (60) inches, minimum, above the ground, measured from the bottom of the sign. All eight (8) accessible parking spaces on the Property now meet this requirement, including the ones that were identified in the Plaintiff's Amended Complaint. (<u>Aff. of Baez</u>, ¶ 8, 12, 14(a)-(b)). This evidence clearly establishes that the requirement with respect to height of signage for accessible parking spaces has been satisfied, further rendering these claims moot.

      c.    ***Width & Slope of Access Aisles Adjacent to Parking Spaces***

With respect to ADA accessible parking spaces, Plaintiff also alleged in the Complaint that she encountered accessible parking spaces in front of businesses Qdoba Mexican Grill, Z Wireless, First Watch (to the west), and The Green Spot (to the south) that had "narrow adjacent access aisles" in violation of ADAAG Section 502.3. (<u>See</u> Amended Complaint, Doc. 22, ¶ 14, 38(c)). ADAAG Section 502.3.1 sets forth the width requirement for such access aisles adjacent to accessible spaces, and requires that access aisles shall be, at a minimum, 60 inches wide. With respect to ground slope of these access aisle areas, ADAAG Section 502.4 allows for slope no steeper than 1:48. The advisory comment to Section 502.4 states that the aisles are merely required

to be "nearly" level in all directions and that "built-up curb ramps" are not permitted to "project" into the aisles.

Defendant undertook steps to determine the validity of the allegations as to both the width and the ground slope of the access aisles identified by the Plaintiff as well as all other access aisles in the parking lot on the Property. (Aff. of Baez, ¶¶ 9, 12, 14). Based on the evidence hereby submitted by Defendant, the access aisle that was determined to be narrower than the required width as set forth in the ADAAG was the aisle adjacent to an accessible space in front of the restaurant First Watch. (Id., ¶¶ 9, 12(g), 14(c)). The width of this adjacent access aisle was restriped to exceed the required 60 inches. (Id. ¶ 9). The measurements conducted on all other access aisles on the Property confirm that they are also at least 60 inches wide, and as long as the space that they serve, in compliance with the ADA requirement. (Id. ¶¶ 12, 14(c)). Furthermore, the measurements of ground slope in all access aisles on the Property were confirmed to be no steeper than 1:48. (Id., ¶¶ 12, 14(b)). The evidence of the remediation to the First Watch access aisle, and confirmation of all other access aisles, (including those not encountered by the Plaintiff), makes clear that this alleged barrier has been removed, rending these claims moot.

    d. ***Curb Ramp Landings***

With respect to curb ramp landings, Plaintiff's Amended Complaint alleges that she encountered certain curb ramps providing access to the businesses at the Property that "lacked a landing at the top of the ramp" and specifically identified curb ramps to "the north of Qdoba, to the south of Z Wireless, and to the south of The Green Spot". (See Amended Complaint, Doc. 22, ¶ 16-18, 38(d)). ADAAG Section 406.4 provides that landings shall be provided at the tops of curb ramps, and that they must be, at a minimum, 36 inches in length, and be at least as wide as the curb ramp. There is an

10

exception, however, that where there is no landing at the top of the curb ramp, that curb ramp "flares" shall be provided, and the slope of the flares shall not be steeper than 1:12. (See ADAAG § 406.4).

Based on the evidence hereby submitted by Defendant, there are adequate curb ramp landings relating to Qdoba and Z Wireless which are at least 36 inches in length and as wide as the curb ramps. (Aff. of Baez, ¶¶ 12(a) - (d), 14(d)). The slope of the curb landings of these areas was confirmed to be no steeper than 1:12. (Id.) While a curb ramp landing in front of The Green Spot does not exist, curb ramp "flares" do exist, within the maximum slope, which fall under the exception as set forth in ADAAG Section 406.4. (Id. ¶¶ 12(e), 14(d)). The photographs attached to the Affidavit of Victor Baez depict the adequate length, width, and slope of the curb landing areas in all accessible areas of the parking lot, including those not specifically encountered by the Plaintiff. Thus, the Plaintiff's claims as to the curb ramp landings on the Property are moot.

  e.  ***Slope of Ramp***

Related to curb ramps, Plaintiff's Amended Complaint alleges that she encountered one curb ramp providing access to the "entrance of First Watch from the west was very steep" and had a slope greater than 1:12, in violation of ADAAG Section 405.2. (See Amended Complaint, Doc. 22, ¶ 19, 38(e)). ADAAG Section 405.2 states that ramps "shall have a running slope that is not steeper than 1:12." Based on the review of all ramps providing access to the tenant businesses on the Property, it was the ramp to the west of Qdoba Mexican Grill, (servicing Parking Stall No. 2), and not the ramp identified in the Amended Complaint, that had a curb ramp slope that was steeper than 1:12. (Aff. of Baez, ¶¶ 7, 12(b), 14(e)). Based upon this, Defendant incurred the expense to retain a contractor and paid for the removal and replacement of this curb ramp. (Id. ¶ 7.) Thus, the slope of the deficient curb ramp has been fully remedied, and

11

all other curb ramps have been confirmed to not exceed a slope greater than 1:12, rendering the Plaintiff's claims moot.

    f.    ***Accessible Routes on Sidewalk***

Plaintiff further alleges that she encountered sidewalk barriers on "other visits" to the Property and that Plaintiff was "unable to access other tenants from accessible spaces due to sandwich board advertising, planters, and other obstructions" in violation of 28 C.F.R. § 36.211.  (See Amended Complaint, Doc. 22, ¶ 21, 38(f)).  Title 28, Code of Federal Regulations, Section 36.211(a) requires that a public accommodation, such as the Property, maintain "in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities..." but does allow for isolated or temporary interruptions in service or access due to maintenance or repairs.  See 28 C.F.R. § 36.211(b).

If any of the alleged sidewalk barriers existed and prevented the Plaintiff from accessing the sidewalks on February 13, 2018, or on any other dates, that provide access to the tenant business located on the Property, including The Green Spot, the alleged obstructions on all sidewalks to all tenant businesses have since been removed. (Aff. of Baez, ¶¶ 13, 14(f)).  Thus, Plaintiff's claims with respect to Defendant's alleged failure to maintain accessible features, being the sidewalks on the Property, are moot.

Based on the above, Defendant has met its burden of showing that it is clear the alleged violations could not reasonably be expected to recur, because it is not reasonable that Defendant would seek to undo the remedial work that was completed on the Property, which required significant time and expense. Nor would it be reasonable to conclude that Defendant would engage in activity to make other areas of the parking lot and sidewalks non-compliant with the ADA. See Davis v. Anthony, Inc., No. 8:16-CV-00140, 2016 U.S. Dist. LEXIS 182053 at *7 (D. Neb. Sept. 26, 2016)

(acknowledging that defendant spent significant time and expense to remedy parking lot and "Given the absence of any evidence to suggest the defendant will senselessly undue its remediation efforts, the Court is satisfied the ADA violations Davis alleged in her Complaint cannot reasonably be expected to recur.")

Accordingly, because the barriers alleged by the Plaintiff have been addressed and/or remedied, there are no outstanding violations, and no barriers to access, which renders this lawsuit moot. This Court cannot grant relief demanded by the Plaintiff when such relief has already been voluntarily and permanently addressed by the Defendant. Therefore, this Court should dismiss this case for lack of subject matter jurisdiction, with prejudice, on this basis.

## II.     **The Plaintiff Lacks Standing to Bring this Action Pursuant to Article III, Section 2 of the United States Constitution.**

Notably, because federal jurisdiction is limited by Article III, Section 2, of the United States Constitution to actual cases and controversies, a plaintiff must also have standing to sue. Stewart, No. 8:16-CV-484, 2017 U.S. Dist. LEXIS 5352 at *9 (D. Neb. Jan. 13, 2017). The United States Supreme Court has recognized that "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544, 194 L. Ed. 2d 635 (2016) (citing Raines v. Byrd, 521 U. S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)).

There are three (3) elements a plaintiff must prove to establish standing, which include: (1) the plaintiff must have suffered an injury in fact, (2) which is fairly traceable to the challenged conduct of the defendant, **and** (3) that is likely to be redressed by a favorable judicial decision. Id. at 1547. In this case, the Plaintiff cannot sufficiently establish an injury of fact, which alone defeats her standing to bring this action.

Furthermore - even if Plaintiff could establish the first two elements - which she cannot - Plaintiff cannot show that her alleged injury can be redressed by a favorable judicial decision because the alleged ADA violations have been remedied.

To establish an injury in fact, a plaintiff must show that they suffered an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id. at 1548. Here, Plaintiff has asserted a generalized claim that the alleged barriers she encountered at the Property have deterred her from visiting the Property in the future and that she intends to so return at some unspecified time in the future. (See Amended Complaint, Doc. 22, ¶¶ 23, 25). The Ninth Circuit Court of Appeals has recognized what is known as the "deterrent effect doctrine", which states that a plaintiff suffers a cognizable injury for standing purposes if they are deterred from visiting a noncompliant public accommodation where the plaintiff has encountered barriers there. See, e.g., Doran v. 7-Eleven, Inc., 524 F.3d 1034 (9th Cir. 2008). The Eighth Circuit Court of Appeals, however, does **not** recognize this doctrine, and has in fact "**declined to do so**." Davis at *7 (rejecting [the same] plaintiff's theory that she suffered a cognizable injury where a barrier encountered in a parking space deterred her from returning). In fact, for purposes of standing, it is **essential** for Plaintiff to show that there is a likelihood of future injury where, as here, a plaintiff is seeking injunctive relief (her sole remedy) as opposed to damages for past wrongs. Brown, No. 4:09-cv-3088, 2010 U.S. Dist. LEXIS 13625 at *17 (D. Neb. Feb. 16, 2010).

Thus, Plaintiff's alleged injury that she has been deterred from visiting the Property does not appear to be actual or imminent, and should not be recognized as anything other than merely conjectural or hypothetical. Davis v. Anthony, Inc., No. 8:16-CV-00140, 2016 U.S. Dist. LEXIS 182053 at *7-8 (D. Neb. Sept. 26, 2016) (dismissing

Plaintiff's lawsuit and finding that "the mere possibility that Davis might find some - yet unidentified - ADA violations somewhere…at some point in the future…does **not** present an actual case or controversy for purposes of Article III"); Saunders v. Mayo Clinic, 2015 U.S. Dist. LEXIS 2015 U.S. Dist. LEXIS 21824 at *16 (D. Minn. Feb. 24, 2015) (finding that plaintiffs lacked standing to seek injunctive relief where they failed to demonstrate a likelihood of future injury); Brown v. Grand Island Mall Holdings, Ltd., 2010 U.S. Dist. LEXIS 10695 at *9 (D. Neb. Feb. 8, 2010) (dismissing plaintiff's Title III ADA claims where plaintiff could not show injury in fact, holding that "[An] ADA plaintiff cannot manufacture standing to sue in a federal court by simply claiming that [s]he intends to return to the Facility.") Therefore, just as the Eighth Circuit Court of Appeals affirmed in Davis, Plaintiff does not have standing to bring this lawsuit.

Furthermore, Plaintiff cannot expand her standing to sue by claiming in the Complaint that the violations alleged are "not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff." (See Amended Complaint, Doc. 22, ¶ 39). This is because Plaintiff does not have standing to seek relief for all ADA violations on the property or within tenant business that Plaintiff did not personally encounter. Davis, No. 16-4051, 2018 U.S. App. LEXIS 7898 at *6-7 (affirming that Plaintiff Davis could not use the violation encountered in a parking space to expand her standing to sue for unencountered violations that never injured her). Likewise, because Plaintiff lacks standing, she is not entitled to jurisdictional discovery, such as a site inspection, in order to make further demands and to needlessly continue this litigation. Hillesheim, 2017 U.S. Dist. LEXIS 117266 at *23 (dismissing Plaintiff's Title III ADA claims where there was "nothing left for the Court to address at all" and noting that plaintiff did not have standing to conduct a site inspection "so that they may demand

removal of the barriers they discover during that site inspection.") (quoting Disability Support Alliance, 160 F.Supp.3d 1133, 1138 (D. Minn. Feb. 3, 2016) (dismissing plaintiff's Title III ADA parking lot claims for lack of standing)).

Finally, Plaintiff cannot show that her injury would be redressed by a favorable judicial decision, because the voluntary remedial work undergone by the Defendant has **eliminated** the Plaintiff's need for injunctive relief. Davis, 8:16-CV-00140, 2016 U.S. Dist. LEXIS 182053 at *6 (D. Neb. Sept. 26, 2016) (citing Hummel v. St. Joseph Cty. Bd. of Comm'rs, 817 F.3d 1010, 1022 (7th Cir. 2016) (finding that the plaintiff's need for injunctive relief was eliminated by the defendant's voluntary compliance with the ADA)); Stewart, 2017 U.S. Dist. LEXIS 5352 at *9 (D. Neb. Jan. 13, 2017) (finding request for relief would not be redressed by a favorable decision from the court where defendant remedied the alleged ADA violations); Hillesheim, 2017 U.S. Dist. LEXIS 117266 at *26 (D. Minn. June 19, 2017) (dismissing plaintiff's claim where violations were voluntarily remedied and noting plaintiff "no longer has anything to gain from a favorable resolution of his ADA claim"); Davis[4] v. Queen Nelly, L.L.C., 2016 U.S. Dist. LEXIS 139750 at *4 (D. Minn. October 6, 2016) (dismissing plaintiff's Title III ADA claims for lack of standing because court could not grant injunctive relief where the alleged violations had been remedied by defendant).

Again, in this case, the alleged ADA violations have been already addressed and remedied, as discussed at length above and as set forth in the Affidavit of Victor Baez. Therefore, based on the above, not only should this lawsuit be dismissed for mootness, it should also be dismissed for lack of standing.

---

[4] The case involved the same Plaintiff, Melanie Davis, and the same attorney, Padraigin Browne.

### III. **This Court Should Deny Plaintiff's Request for Attorney's Fees and Any Other Claimed Relief because the Plaintiff is not a "prevailing party."**

This Court should deny any claimed award of costs, expenses, or attorney's fees in this case because the Plaintiff cannot be a prevailing party under Title 42, United States Code, Section 12205, due to the voluntary remedial work conducted by the Defendant on the Property. The law is clear in the Eighth Circuit that "a legal change, rather than a voluntary change, in the relationship of the parties, is required [to support a fee award under 42 U.S.C. § 12205.]" Christina A. v. Bloomberg, 315 F.3d 990, 992 (8th Cir. 2003) (relying on Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 605 (2001)) (holding that a defendant's voluntary change in conduct lacks the necessary judicial *imprimatur* on the change in the parties' legal relationship to qualify the plaintiff as a prevailing party to support an award of fees under 42 U.S.C. § 12205).

Many courts have declined to order attorney's fees in ADA lawsuits where a defendant has voluntarily remedied the alleged ADA violations. See Stewart, No. 8:16-CV-484, 2017 U.S. Dist. LEXIS 5352 (D. Neb. Jan. 13, 2017); Davis, No. 8:16-CV-00140, 2016 U.S. Dist. LEXIS 182053 (D. Neb. Sept. 26, 2016); Davis v. Peters Services, Inc., No. 1:16-CV-00020 (S.D. Iowa Mar. 10, 2017). In **declining** to award **any** attorney's fees in an ADA lawsuit involving the same plaintiff, Melanie Davis, Chief Judge Jarvey in the Southern District of Iowa stated in his order that the "single reward a plaintiff can expect from this type of action is the swift and effective remediation of the ADA violation" and that the statute (referring to 42 U.S.C. § 12205) "presumes that the plaintiff's reward is the free and independent use of the place of public accommodation at issue - not monetary gain." Id. In fact, Judge Jarvey acknowledged that "nationwide,

17

courts have expressed concern [over] the increasingly unsavory use of the attorney's fees provision of Title III of the ADA."[5]  Id.  (citing Ass'n for Disabled Americans, Inc. v. Integra Resort Mgmt., Inc., 385 F.Supp.2d 1272, 1284-84 (M.D. Fla. 2005)).  Judge Jarvey also stated: "Given the simplicity of the action, Davis' own experience as a Title III plaintiff[6], and Defendant's prompt remedial action, calling Davis a 'prevailing plaintiff' stretches the meaning of the phrase."  Id.

Other courts have recognized that the statutory scheme of the ADA and the incentive of the attorney's fee provision has resulted in an "explosion" of private ADA-related litigation - usually by a small number of plaintiffs and their attorneys.  Rodriguez v. Investco, L.L.C., 305 F. Supp. 2d 1278, 1281-82 (M.D. Fla. Feb. 24, 2004) (noting that the "current ADA lawsuit being is essentially driven by economics - that is, the economics of attorney's fees.")

As described herein, the Defendant in good faith remedied the ADA violations alleged in this case swiftly, permanently, and effectively.  Given this voluntary action by the Defendant, the Plaintiff cannot be said to be the prevailing party, and thus, should be denied any requested attorney fees or any other claimed damages.

## CONCLUSION

The Defendant's voluntary remediation of all barriers to access alleged by the in her Amended Complaint has rendered Plaintiff's claims for declaratory and injunctive relief moot.  Additionally, Plaintiff lacks standing to sue.  Thus, the Defendant

---

[5] In Hillesheim v. Buzz Salons, L.L.C., an ADA case filed by Padraigin Browne, the Court, in denying plaintiff's request for a further inspection of a property to find other ADA claims, stated that plaintiff's "suggestion of additional violations say less about [defendant] … and more about [plaintiff] and **a litigation strategy designed to draw out these proceedings**."  2017 U.S. Dist. LEXIS 117266 at *20 (D. Minn. June 19, 2017).

[6] The court also noted that Plaintiff Davis had (at the time) been involved in approximately 50 Title III ADA lawsuits individually and approximately 80 as part of a dissolved non-profit, Disability Support Alliance.

18

respectfully requests that this Court grant Defendant's Motion to Dismiss for lack of subject matter jurisdiction, enter an order denying attorney's fees or any other claimed relief, and dismiss the Amended Complaint with prejudice.

Dated this 19th day of June, 2018.

AK-SAR-BEN VILLAGE, L.L.C.,
Defendant

By: /s/ *Katherine A. McNamara*
Katherine A. McNamara, #25142
FRASER STRYKER, PC, LLO
500 Energy Plaza
409 South 17th Street
Omaha, Nebraska 68102-2663
402.341.6000 Facsimile: 402.341.8290
kmcnamara@fraserstryker.com
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th of June, 2018, I electronically filed the foregoing with the Clerk of Court of the District of Nebraska by using the CM/ECF system, which sent notification of such filing to all parties.

Padraigin L. Browne
Browne Law LLC
8530 Eagle Point Blvd, suite 100
Lake Elmo, MN 55042
paddy@brownelawllc.com

/s/ *Katherine A. McNamara*