IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MELANIE DAVIS,

        Plaintiff,

vs.

AK-SAR-BEN VILLAGE, L.L.C.,

        Defendant.

**8:18CV101**

**MEMORANDUM AND ORDER**

This matter is before the court on the parties' cross motions to compel certain discovery responses. (Filing Nos. 82 & 85). For the reasons outlined below, Defendant's Motion (Filing No. 82) will be granted in part and denied in part and Plaintiff's Motion (Filing No. 85) will be denied without prejudice to re-filing as needed to address the defenses which will actually be litigated in this case.

**BACKGROUND**

On March 2, 2018, Plaintiff Melanie Davis ("Plaintiff") sued Defendant Ak-Sar-Ben Village, LLC ("Defendant") alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189 at a multi-tenant commercial building owned by Defendant at street address 1220 S. 71st St., Omaha, NE, 68106 ("the Property"). On May 15, 2018, Defendant moved to dismiss Plaintiff's Complaint on jurisdictional grounds, and Plaintiff countered by filing an Amended Complaint. (Filing No. 19 (arguing for dismissal under Fed. R. Civ. P. 12(b)(1) for lack of standing and for mootness));(Filing No. 22 (amending Plaintiff's complaint as a matter of right under Fed. R. Civ. P. 15(a)(1))). Defendant then withdrew its pending motion to dismiss, which it refiled in opposition to Plaintiff's new operative pleading. (Filing No. 28).

In support of dismissal, Defendant argued that it had remedied any ADA violation at the Property and had thus vitiated Plaintiff's standing to sue and mooted this case. The parties extensively briefed those issues, with Plaintiff arguing that Defendant had not sufficiently demonstrated complete ADA compliance at the Property.

Senior United States District Judge Joseph F. Bataillon denied Defendant's motion to dismiss, determining that Defendant "did not halt <u>all</u> of its allegedly-wrongful behavior. It halted <u>some</u> of its allegedly-wrongful behavior and argues that the rest of its allegedly-wrongful behavior is not actually-wrongful behavior." ([Filing No. 49 at CM/ECF p. 10](#)) (emphasis added). The court reasoned that "[w]hen defendants have made this move—halting some behavior and justifying other behavior—courts have refused to call the case moot." ([Id](#)). As a result, the court did not resolve the parties' dispute as to whether the Property now fully complies with the ADA, noting that "[t]he Court can determine that the case is not moot without resolving those factual questions... [.]" ([Id. at CM/ECF p. 9](#)). Thus, the case headed into the discovery phase[1] with the parties disagreeing as to whether the Property was in full compliance with the ADA.

After discovery was served in the fall of 2019, each party was dissatisfied with some of the opposing party's responses. They attempted to resolve their disputes, but were unable to do so, and ultimately sought judicial guidance. On

---

[1] In May 2019, Plaintiff moved for permission to file its second amended complaint, which the court allowed. Plaintiff filed her Second Amended Complaint on October 22, 2019. ([Filing No. 76](#)). Defendant answered thereafter. ([Filing No. 79](#)). Thus, while discovery opened prior to the October 22, 2019 pleading amendment, it did not begin in earnest until late 2019 – after Defendant answered Plaintiff's Second Amended Complaint on November 5, 2019. (Id).

January 7, 2020, the undersigned magistrate judge held a telephonic conference to discuss the parties' respective positions on discovery. (Filing No. 81, audio file). During the conference, Plaintiff argued that Defendant improperly objected to Plaintiff's Requests for Production Nos. 16-20, which are targeted at obtaining a picture of Defendant's financial health and profitability. Plaintiff has requested Defendant's tax returns, bank statements, tenant leases, and certain profit and loss statements and worksheets. Plaintiff asserts she needs access to Defendant's financial data in order to overcome Defendant's affirmative defense that the modifications requested are not "readily achievable," as defined in 42 U.S.C. § 12181(9).

Likewise, Defendant believes that Plaintiff has improperly objected to Defendant's Interrogatory Nos. 19, 22, and 23 and Defendant's Request for Production Nos. 4 and 5. Defendant requests financial information from Plaintiff, along with other data related to Plaintiff's disability and Plaintiff's history of ADA litigation in various jurisdictions. Defendant argues that the requested information is necessary to probe Plaintiff's credibility as to whether she actually planned to return to and enjoy the Property or whether she filed this lawsuit solely as a means of financial gain. Having reviewed each party's evidence and briefing, the motions will be partially granted and partially denied as outlined below.

**ANALYSIS**

The Federal Rules of Civil Procedure allow for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevancy, for the purposes of discovery, includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). The proportionality

analysis then requires the court to weigh "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." [Fed. R. Civ. P. 26(b)(1)](). The broad scope of [Fed. R. Civ. P. 26]() generally allows discovery "unless it is clear the information sought can have no possible bearing on the case." [Ingram v. Covenant Care Midwest, Inc., 2010 WL 1994866, at *3 (D. Neb. 2010)]().

## I. Defendant's Motion

As noted above, Defendant moves to compel Plaintiff's responses to Defendant's Request for Production Nos. 4 and 5 and Interrogatory Nos. 19, 22, and 23,[2] all addressed below.

### a) Defendant's Requests for Production Nos. 4 and 5 and Interrogatory No. 22

The court will take up Defendant's Interrogatory No. 22 and Defendant's Requests for Production Nos. 4 and 5 together. Defendant's Interrogatory No. 22

---

[2] Plaintiff argues in her brief that Defendant exceeded the allowable number of interrogatories. Plaintiff claims that because she lodged a general objection to the number of requests propounded, she should not be compelled to respond further. In essence, she claims that when a party believes too many interrogatories were served, that responding party can raise a general objection, unilaterally pick and choose which interrogatories to answer, and refuse to answer the rest. The court is not persuaded. "When a party believes that another party has asked too many interrogatories, the party to which the discovery has be[en] propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the [party] waived this objection." [Allahverdi v. Regents of Univ. of New Mexico, 228 F.R.D. 696, 698 (D.N.M. 2005)](). Plaintiff answered and objected to the interrogatories without seeking a protective order or otherwise refusing to respond to requests she believed to be in excess of the allowable amount. Her objection is waived.

seeks information related to Plaintiff's ADA lawsuits filed in other jurisdictions. Defendant has requested a listing of each person, partnership, company, corporation or governmental entity against whom Plaintiff has made a claim of discrimination under Title III of the ADA. ([Filing No. 84-2 at CM/ECF p. 6](#)). Defendant further requests the date of each claim or suit, the jurisdiction of the court where any suit was filed, and whether Plaintiff received a monetary settlement as a result of any claim or suit filed pursuant to Title III. ([Id](#)). Defendant's Requests for Production Nos. 4 and 5 seek Plaintiff's state and federal tax returns as well as her paystubs, W-2 forms, and other related tax documents. ([Filing No. 84-3 at CM/ECF p. 2](#)). Though targeting different information, each of the foregoing are premised on the same relevancy rationale – i.e., that information related to Plaintiff's previous ADA claims, and financial gains arising therefrom, is relevant as to her credibility on the issue of standing to pursue this case. ([Filing No. 83 at CM/ECF p. 7](#))

As an initial matter, the court notes that it "must tread carefully before construing a Disability Act plaintiff's history of litigation against him." See, e.g., [Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1175 (9th Cir. 2010)](#) (noting that the court should be "particularly cautious regarding credibility determinations that rely on a plaintiff's past [Disabilities Act] litigation") (internal citation omitted). Indeed, other courts have

> recognize[d] that the unavailability of damages [under the ADA] reduces or removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit under the ADA. See Samuel R. Bagenstos, [The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation, 54 U.C.L.A. L.Rev. 1, 5 (2006)](#). As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. District courts should not condemn such serial litigation as vexatious as a matter of course.

Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9th Cir. 2007). However, while the above rationale is premised on valid policy goals, it must be weighed against the need to protect from "an end-run around the ADA's limitations on remedies." Harris v. Stonecrest Care Auto Ctr., LLC, 472 F. Supp. 2d 1208, 1215 (S.D. Cal. 2007). Because damages are unavailable under the ADA, there is the danger that "serial plaintiffs" may be serving essentially as "professional pawns in an ongoing scheme to bilk attorney's fees" while having no real interest in vindicating afflicted rights under the ADA. Brother v. Tiger Partner, LLC, 331 F.Supp.2d 1368, 1375 (M.D.Fla.2004).

Defendant argues that Plaintiff falls into the latter camp and requests the above discovery in order to probe her credibility as to certain elements of her claim. Defendant specifically questions Plaintiff's "intent to return" to the Property. An ADA plaintiff lacks standing unless she has a "likelihood of future injury." Brown v. Grandmother's, Inc., 2010 WL 611002, at *6 (D. Neb. Feb. 17, 2010). This requires a plaintiff to show a "plan to return" to the subject property, which must be more than just a speculative desire to visit the premises "some day." Id. Plaintiff has pleaded an intent to return to the Property and has previously offered affidavit testimony regarding the same. (Filing No. 37). She further indicates that she has visited and plans to return to Green Spot, Bed Bath and Beyond, and Qdoba, all tenants at the Property. (Id). As noted, Defendant has called into question Plaintiff's credibility as to that intent, arguing instead that she may have filed this lawsuit solely for financial gain.

It is axiomatic that a litigant may discover facts related to a witness' credibility. See Hickman v. Taylor, 329 U.S. 495, 511 (1947). But the court cannot afford the parties the unfettered ability to probe into all aspects of a witness' veracity. If unchecked, "the areas to be probed to test a witness' credibility are virtually limitless." Barrett v. Reynolds, 2014 WL 1223330, at *4 (D. Neb. Mar. 24,

2014) (quoting Davidson Pipe Co. v. Laventhol & Horwath, 120 F.R.D. 455, 462 (S.D.N.Y.1988)) (emphasis added). In order to fairly limit the scope of discovery, in the spirit of the federal rules, the court should consider several factors in evaluating whether credibility discovery is permissible. Barrett, 2014 WL 1223330, at *4. Those factors include: "(1) whether the prior acts in question demonstrate a propensity for deception; (2) the extent to which the prior act occurred in a context where there is a premium on veracity; (3) the lapse of time between the prior act and the trial testimony; (4) the relationship between the subject matter of the prior deceptive act and that of the instant litigation and (5) whether the party seeking disclosure has a foundation for its inquiry." Id.

On balance, the above factors counsel in favor of allowing the requested discovery. Defendant has articulated a specific, limited category of information regarding Plaintiff's credibility: information related to past ADA litigation and any resultant monetary payments received. As the Defendant points out, Plaintiff has filed dozens of ADA actions in this forum alone, (Filing No. 83 at CM/ECF p. 5), with a similar number previously filed in United States District Court for the District of Minnesota. (Id). Plaintiff correctly notes that her intent to return to the other properties she has sued may be inadmissible to prove her intent to return to the Property at issue in this litigation. See D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1037 (9th Cir. 2008). But the court is not here deciding whether this information is admissible – as direct evidence, credibility evidence, or otherwise. That determination will be left to the ultimate trier of fact. The discovery rules are explicit: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). So long as her history of litigation is relevant to her credibility – and the court finds that it is – that is sufficient for the purposes of discovery.

The court makes no judgment as to Plaintiff's credibility and wishes to make clear that the foregoing is neither an accusation regarding, nor condemnation of, her intentions in this or any other litigation. And the court is cognizant of the law mandating that an ADA Plaintiff's past litigation experience cannot be held against the plaintiff. [Antoninetti, 643 F.3d at 1175](). However, the court is satisfied that Defendant has articulated a reasonable basis to, at minimum, discover the requested information. If Plaintiff has previously received financial incentive to file ADA claims, that information could be properly used to undermine her assertion that this case was filed because she wants to return to the Property—a question that goes to the heart of standing. Should Defendant's discovery requests unearth facts the Plaintiff believes are unduly prejudicial, irrelevant, or the like, she is free to move in limine to exclude any information she believes is inadmissible under the federal evidentiary rules.

1. Interrogatory No. 22.

As to Interrogatory No. 22, the court orders Plaintiff to respond as requested. Plaintiff will provide Defendant with a listing of all responsive lawsuits, including all the information requested by Defendant in subsections (a) – (d). The court notes that in their briefing and in previous letters to the court, the parties have indicated some compromise on the scope of this interrogatory. The court does not know the parameters and specifics of that agreement. But so long as the parties have an agreement, the scope of this interrogatory can be limited accordingly. However, the court believes the interrogatory, as drafted, is permissible, and this order will require Plaintiff to fully respond, absent agreement of the parties otherwise.

Additionally, Plaintiff claims that she should not be required to respond to Interrogatory No. 22 because the Defendant could access the information online using the federal PACER platform or other publicly available means. ([Filing No. 90]()

at CM/ECF p. 3). This is not strictly true. Subsection (d) asks whether Plaintiff received financial compensation. That information would not be available on PACER. Likewise, the interrogatory is not limited to formally filed lawsuits. It targets informal demands made by Plaintiff pursuant to the ADA. (Filing No. 84-2 at CM/ECF p. 6). That information is not available publicly either. And, even as to the publicly available components, Plaintiff has not demonstrated a compelling reason why it would be more burdensome for her to compile the requested information than it would be for Defendant. "[A]ll discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." Anderson v. Nebraska Med. Ctr., 2013 WL 6197094, at *2 (D. Neb. Nov. 27, 2013) (internal citation omitted). Plaintiff bears the burden of responding.

2. Requests for Production Nos. 4 and 5

As to Requests for Production Nos. 4 and 5, the motion is granted in part. Plaintiff will be required to respond to Requests for Production Nos. 4 and 5, as follows.

Tax returns "are not absolutely privileged from civil discovery, but a heightened showing of relevance and necessity is required before discovery will be permitted." Home Instead, Inc. v. Florance, 2013 WL 5979629, at *9 (D. Neb. Nov. 8, 2013) (citing Flores v. Tyson Foods, Inc., 2013 WL 1091044 at *5 (D. Neb. Mar. 15, 2013)). This court has adopted a two-prong approach. First, the court should analyze whether "the moving party has established that the tax returns are relevant to the parties' dispute." Id.

This court has previously concluded that tax and other financial information is discoverable to probe an ADA plaintiff's credibility on the issue of intent to return to the Property. Hillesheim v. Bucks, Inc., 8:18-cv-00037 (see Filing No. 19 (on the record discovery conference at which the court ruled plaintiff's tax returns discoverable)); Brown, 2010 WL 611002, at *6. If Plaintiff is pursuing this litigation for purely financial reasons, she may not have standing.

Thus, tax and financial information related to whether Plaintiff is employed by her attorney and/or receiving income for acting as an ADA plaintiff is relevant to whether she has credibly asserted that she filed this litigation because she intended to utilize the Property in the future. There appears to be some question as to whether the relationship between Plaintiff and her counsel is purely attorney-client. Plaintiff and her partner, Zach Hillesheim, both rely on wheelchairs for mobility and together, as of August 2018, the couple had filed more than 90 percent of all pending ADA claims in this district. (Filing No. 84-9 at CM/ECF p. 2). All of those lawsuits were filed on their behalf by the same attorney of record. Hillesheim receives a portion of the "settlement money" paid in these cases, with the majority going to his attorney. (Filing No. 84-9 at CM/ECF p. 3). Since the cases seek injunctive relief only, he must be receiving a portion of the attorney fees awarded to Plaintiff's counsel. If Plaintiff has a similar fee-splitting arrangement with her attorney, whereby Plaintiff is compensated for investigating local businesses for ADA compliance and then serving as counsel's federal plaintiff, that fact is relevant in determining whether Plaintiff can credibly assert that she encountered barriers when she attempted to enter or use the Property and that she has standing to file this lawsuit because she intends to return to and utilize the Property. Plaintiff's tax returns would include any income received from any such fee-splitting arrangement.

Her tax information is also relevant in order to determine what, if any, proportion of her overall income directly flows from ADA litigation. Hillesheim v. Bucks, Inc., 8:18-cv-00037. Indeed, if the records bear out that any portion of her income derived from ADA litigation is de minimus in comparison with income from other sources, that would tend to bolster her credibility in connection with her actual intention to use the Property. If the portion is outsized, that would arguably undercut her credibility. How much weight, if any, to give to any fee-splitting arrangement would be left to the trier of fact.

If the requesting party demonstrates relevance, as here, then "the responding parties must produce the returns unless they show there is no compelling need for production of the returns; that is, the relevant information within the returns is readily obtainable from another source." Home Instead, Inc., 2013 WL 5979629, at *9. The requested information is necessary in order to contextualize Plaintiff's ADA litigation income, if any, into the full view of her financial situation. That full view is not "readily obtainable" elsewhere. Id. She will be compelled to produce all of the information requested in Defendant's Requests for Production Nos. 4 and 5. However, the court will limit the production only to those portions of her tax returns that specifically indicate the amounts and sources of her income. Id. (limiting production to "portions of the tax return(s) reflecting all income received along with copies of any documents supporting those income disclosures"). This includes income derived as both a W-2 employee or Form 1099 independent contractor.[3] Produced records will be subject to the parties' protective order at Filing No. 57.

---

[3] Defendant has only requested that Plaintiff individually produce W-2 forms and has not specifically asked for production of any Form 1099 that Plaintiff has received for work as an independent contractor. For clarity, this order is only compelling production of the requested W-2 information. Plaintiff's income derived from any independently contracted work will only be produced to the extent it is included on Plaintiff's state and local tax returns or on paystubs produced in response to Request No. 4.

### b) Defendant's Interrogatory No. 19

Defendant's Interrogatory No. 19 seeks information regarding Plaintiff's disabled status and whether she receives government benefits. Specifically, Defendant requests a listing of each government entity to which Plaintiff submitted an application for disability benefits, whether benefits were granted, the amount of any granted benefits, and the reasons why Plaintiff applied for such benefits. ([Filing No. 84-2 at CM/ECF p. 5](#)).

In response, Plaintiff objected to the relevancy of the interrogatory but answered over her objection that she "qualities for federal disability benefits based on her cerebral palsy." ([Filing No. 84-4 at CM/ECF p. 11](#)). She further clarified in her brief opposing Defendant's Motion to Compel that she "applied" for disability status based on her cerebral palsy. ([Filing No. 90 at CM/ECF p. 2](#)).

Thus, there does not appear to be a dispute as to whether Plaintiff has applied for governmental benefits based on her cerebral palsy. However, that does not fully answer the request. As with Requests for Production Nos. 4 and 5, this interrogatory is targeted at obtaining a full view of Plaintiff's finances. For the same reasons as above, her overall financial health is relevant to whether she was motivated by financial gain to file the instant lawsuit and not by an intent to prospectively utilize the Property. That, as discussed, potentially speaks to her credibility. Thus, the amount of federal benefits received monthly by Plaintiff is relevant, in order to fully assess her financial situation and to appropriately determine the proportion, if any, of her overall income that is derived from funds flowing from ADA litigation.

That notwithstanding, the court will limit Plaintiff's required response to Interrogatory No. 19 to providing a list of the monetary amount of benefits she has

received each month for the last five years. Plaintiff is not required to disclose the basis on which she applied or the agency to which any application was directed. She is not required to disclose whether any application for benefits was denied. She is only required to disclose whether, and in what amount, she has received disability benefits.

### c) Defendant's Interrogatory No. 23

In her brief in opposition to Defendant's Motion to Compel, Plaintiff has withdrawn her objection to Interrogatory No. 23. ([Filing No. 90 at CM/ECF p. 3](#)) ("Davis will provide the requested information in a separate document labeled confidential."). The court agrees that the request is relevant. To the extent that Plaintiff has not complied with its obligation to respond to Interrogatory No. 23 as of the date of this order, the court will compel Plaintiff's compliance. The response will be subject to the parties' protective order at [Filing No. 57](#).

## II. Plaintiff's Motion

Plaintiff's moves to compel responses to her Requests for Production Nos. 16-20. Are previously noted, the disputed requests target Defendant's finances and profitability. Plaintiff has requested Defendant's tax returns, bank statements, tenant leases, and certain profit and loss statements and worksheets. Plaintiff argues that all the foregoing financial information is relevant to Defendant's affirmative defense that the requested changes are not "readily achievable," as defined in [42 U.S.C. § 12181(9)](#).

A place of public accommodation is non-compliant with the ADA if it "fails to remove architectural barriers ... in existing facilities ... where such removal is readily achievable." [Wright v. RL Liquor, 887 F.3d 361, 363 (8th Cir. 2018)](#) (quoting

42 U.S.C. § 12182(b)(2)(A)(iv)). Removal is readily achievable if it is "easily accomplishable and able to be carried out without much difficulty or expense." Id. (quoting 42 U.S.C. § 12181(9)). The statutory scheme then provides several factors the court should consider in analyzing whether barrier removal is readily achievable. Id.

In Wright, the Eighth Circuit addressed the readily achievable standard, noting that "[t]he ADA does not state whether the plaintiff or the defendant has the initial burden of production that removal is readily achievable." Wright, 887 F.3d at 364. The Wright Court went on to adopt a burden shifting standard utilized by several sister circuits, placing the initial burden of production on the plaintiff as to whether a proposed correction is readily achievable. Id. at 364 ("Following the Tenth, Second, and Eleventh Circuits, this court holds that the district court properly required [plaintiff] to initially present evidence tending to show that the suggested method of barrier removal was readily achievable under the circumstances.").

The parties both cite Wright, each arguing that its burden shifting framework supports their own position on the relevancy of Defendant's financial information. Plaintiff argues that information regarding Defendant's financial condition is relevant to meeting its initial burden. Plaintiff cites the factors listed in 42 U.S.C. § 12181(9), noting that most deal with the financial ability of an ADA defendant to remove barriers to access at their facilities. (Filing No. 90 at CM/ECF p. 3). And the readily achievable standard in fact does outline several financial considerations the court should weigh, including "the overall financial resources of the facility," "the effect on expenses and resources," and "the impact…upon the operation of the facility." 42 U.S.C. § 12181(9). Thus, Plaintiff claims, Defendant's requested financial information is relevant to each of those factors and could be used to

support its initial burden of presenting evidence regarding the achievability of its proposed fixes. (Filing No. 90 at CM/ECF pp. 3-4).

Defendant argues that Plaintiff does not need access to Defendant's financial information to meet its initial burden of production under Wright. (Filing No. 89 at CM/ECF p. 2). Under Defendant's interpretation, Wright requires the Plaintiff to "offer a plausible proposal," which Defendant may then counter with evidence that it is not readily achievable. Defendant argues that in order to offer a plausible proposal, Plaintiff does not need access to Defendant's financial information. Plaintiff counters, however, that even if the court were to determine Plaintiff could carry its initial burden without access to Defendant's financial data, it is nevertheless discoverable if Defendant may use it to support its own burden of proof that the fixes are not feasible.[4] (Filing No. 90 at CM/ECF pp. 3-4).

Plaintiff is correct. Regardless of whether the information is used in support of Plaintiff's initial burden or by Defendant in response, the rules of discovery allow a party to request information "that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). The parties are therefore not limited to discovery only as to those issues on which they carry the burden. As a result, the court need not decide whose interpretation of Wright prevails – the information is relevant regardless of how the burden is apportioned and shifted.

The analysis, however, does not stop at relevancy. The party resisting discovery may defeat a motion to compel information—even information that is

---

[4] Defendant additionally argues that the "readily achievable factors" in 42 U.S.C. § 12181(9) include some non-financial criteria, and thus, a readily achievable defense can be successfully asserted irrespective of the party's financial condition. For this reason, Defendant claims, its financial information is irrelevant. However, Defendant concedes that financial criteria can be relevant to its asserted defense. That is all that is required. A party cannot shield itself from discovery simply on its own speculation that the information might be rendered irrelevant in the course of the litigation.

demonstrably relevant—if that party establishes that production would constitute an undue burden or an unreasonable hardship and is thus disproportionate to the needs of the case. The court evaluates several factors when analyzing the proportionality of requested discovery, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). And "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's notes (2015).

It is unclear to the court what, if any, modifications the Plaintiff is requesting. Defendant believes it has made all necessary modifications and is in compliance with the ADA. (Filing No. 29 at CM/ECF p. 2). Defendant notes in its brief in opposition to Plaintiff's motion to compel that it cannot tell how, "if at all," its readily achievable defense applies to Plaintiff's claims because it does not know what Plaintiff is claiming. (Filing No. 89 at CM/ECF p. 3). Put differently, Defendant's readily achievable defense may be rendered wholly irrelevant when Defendant learns what Plaintiff wants and to what extent Plaintiff believes Defendant is not complying with the ADA.

The court, therefore, needs more information in order to fully evaluate the proportionality of Plaintiff's discovery requests to the needs of the dispute. Fed. R. Civ. P. 26(b)(1). Before the court can order the production of information relevant to an affirmative defense, it must determine whether the defense in question is still at issue in the case. This should not be construed as the court requiring Plaintiff to make a showing under Wright. As discussed above, the court is making no determination as to the substantive application of Wright or the scope of either

party's burden. This ruling simply reflects the fact that the court feels unprepared to meet its analytical obligations on proportionality under Rule 26 on the parties' present showing. The court will thus deny Plaintiff's motion, without prejudice to refiling after the plaintiff identifies the modifications in dispute.

Finally, the court will not reach Defendant's argument that its property manager is financially responsible for the fixes, making Defendant's financial information irrelevant. ([Filing No. 89 at CM/ECF p. 4](#)). Evidence of the contours of Defendant's relationship with its property manager are not before the court on this motion. While Defendant cites to Smith v. Bradley Pizza, Inc. in support of its argument that the relationship renders this discovery irrelevant, the District of Minnesota specifically notes that was true only on the specific facts of the case. [Smith v. Bradley Pizza, Inc., 2019 WL 2448575, at *9 (D. Minn. June 12, 2019)](#). The court needs more information on the specific facts of this case, prior to making any finding on this point. Defendant may provide additional evidence on its property management relationship should Plaintiff choose to refile her motion to compel.

In sum, Plaintiff may file a renewed motion to compel Defendant's production of the above requests. Before filing that motion, Plaintiff must articulate what, if any, Property modifications she is requesting for ADA compliance. In response, Defendant can then decide if those proposed modifications merit a readily achievable defense. If Defendant plans to maintain the defense, it will need to provide to the court evidence (as opposed to merely arguments in the briefing) which explains the property manager/tenant relationship and how that relationship impacts the obligation to make any improvements or modifications to the Property.

Accordingly,

IT IS ORDERED:

1) Defendant's Motion to Compel ([Filing No. 82](#)) is granted in part and denied in part, as outlined herein. On or before April 13, 2020, Plaintiff will provide Defendant with supplemental responses to Interrogatory Nos. 19, 22, and 23, and Requests for Production Nos. 4 and 5.

2) Plaintiff's Motion to Compel ([Filing No. 85](#)) is denied without prejudice to re-filing after Plaintiff has identified with specificity the injunctive relief she is requesting and Defendant has raised, in response to that relief, a readily achievable defense. Counsel must promptly confer in good faith on this issue, with any renewed motion by Plaintiff filed on or before April 20, 2020.

3) Due to the pandemic emergency, the parties shall exchange all written discovery electronically rather than in a paper format delivered by mail or human courier.

4) A telephonic status conference will be held before the undersigned magistrate judge on April 27, 2020 at 9:00 a.m. to discuss case progression and dispositive motion deadlines.

March 23, 2020.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge